NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NOBERTO PLUMEY,**<br><br>    Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    Defendant. | 04-CV-1558 (WJM)<br><br><br><br>OPINION |

Agnes S. Wladyka
Abromsom & Carey
10 Park Place
Newark, New Jersey  07102

       (*Attorney for Plaintiff*)

Peter S. Krynski
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Rm 3904
New York, New York  10278-0004

       (*Attorney for Defendant*)

**MARTINI, U.S.D.J.:**

**I.    INTRODUCTION**

       Plaintiff Norberto Plumey brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the Commissioner of Social Security's ("Commissioner's") decision concerning Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI").  In a written opinion issued September 26, 2003,

1

Administrative Law Judge ("ALJ") Katherine C. Edgell found that, although Plaintiff had a severe impairment or combination of impairments, he was not entitled to benefits because he did not qualify as "disabled" within the meaning of the Social Security Act. Ultimately, the ALJ found that Plaintiff retained the residual functional capacity to perform his previous prior work as a warehouse supervisor or driver/messenger. Plaintiff sought review by the Appeals Council, and on March 1, 2004 the Appeals Council denied his request for review.

Plaintiff appeals to this Court to review the ALJ's decision, alleging that the ALJ's determination that Plaintiff retained the residual functional capacity to perform his past prior work is not supported by substantial evidence.

**II.    BACKGROUND**

Plaintiff was born on November 3, 1947 in Puerto Rico. Plaintiff completed his education through the third grade and, after moving to the United States, he continued his education through the eighth grade in 1960. From 1976 to 1999, Plaintiff worked in a warehouse, with approximately ten of those years spent supervising from four to six employees. As a supervisor, Plaintiff's duties included writing reports by hand and on the computer, and making occasional brief trips to the loading dock. Plaintiff retired from his job when it relocated to another State. Subsequently, Plaintiff worked as a driver/messenger for over a year, making several deliveries a day by car. At least one of Plaintiff's messenger jobs required three to four deliveries a day of computer paper which weighed approximately twenty pounds, while others required more frequent deliveries of objects weighing under five pounds. Due to accumulating too many points on his driver's license, Plaintiff lost his messenger job in August of 2001.

Plaintiff then filed for and received unemployment benefits for over a year, after representing to the State that he was able to work and was seeking work.

Plaintiff asserts that a combination of asthma, back problems, allergies and anxiety have prevented him from working since August 5, 2001. He applied for DIB on January 30, 2002 and SSI on September 13, 2002, and the Commissioner denied his application initially and on reconsideration. The Plaintiff filed for an administrative hearing, which was held on September 18, 2003, and on September 26, 2003, the ALJ found that Plaintiff was not disabled.

The ALJ reviewed Plaintiff's medical history, including medical records from Dr. Hector Castillo, Plaintiff's treating physician, dated May 5, 1986 through December 11, 2002. In a report dated October 31, 2002, Dr. Castillo revealed that he had diagnosed Plaintiff with chronic asthma which made Plaintiff incapable of working full-time. The ALJ rejected Dr. Castillo's assessment of Plaintiff's employment capabilities based on a review of the medical evidence and the findings of other examining and consulting doctors.

One of these doctors, Dr. Michael Pollack, examined Plaintiff on May 13, 2002. During the visit, Plaintiff complained of lower back pain that was exacerbated by his asthma. Dr. Pollack found that Plaintiff's pulmonary function test was within normal limits. A physical examination did not produce evidence of respiratory distress or pulmonary abnormalities such as wheezing, rales, rhonchi or cyanosis. X-ray scans disclosed mildly hyperaerated lungs with clear lungs fields. Dr. Pollack diagnosed Plaintiff with asthma, but found no evidence of spinal deformity or other physical abnormalities, and noted that Plaintiff exhibited no difficulty ambulating, had a normal gait, and was able to get on and off the examining table without difficulty. Nonexamining physicians, Dr. Raymond Briski and Dr. Agatino DiBello, noted that

3

though Plaintiff complained of back pain, Plaintiff's medical records demonstrated no significant abnormalities.

The ALJ noted that the record does not contain medical evidence of treatment for any mental disorders, but it does support Plaintiff's ability to control his asthma with a prescription inhaler and to control his back pain with over-the-counter pain medication. The ALJ found that Plaintiff's asthma qualified as a "severe" impairment that did not meet or medically equal a listed impairment in Appendix 1, Subpart P, Regulations No. 4. Additionally, the ALJ found that Plaintiff's residual functional capacity is compromised by non-exertional limitations which preclude prolonged exposure to concentrated levels of dust, fumes, chemicals and smoke, or temperature extremes.

### III.    STANDARD OF REVIEW

The Commissioner of Social Security utilizes a five-step sequential process to evaluate whether a claimant is disabled. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Burnett v. Commr. of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000). In step two, the Commissioner must determine whether the claimant is suffering from a severe medical impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his or her impairment(s) is "severe," he or she is ineligible for disability benefits. 20 C.F.R. § 404.1520(c); *Burnett*, 220 F.3d at 118. If the claimant demonstrates a severe medical impairment, the Commissioner determines in step three whether the impairment meets or equals an impairment listed by the

Commissioner. 20 C.F.R. § 404.1520(d). If the claimant's severe medical impairment satisfies the step three analysis, the Commissioner will find the claimant disabled without considering other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five. *Burnett*, 220 F.3d at 118. At step four, the claimant bears the burden of demonstrating an inability to return to his or her past relevant work. *Burnett*, 220 F.3d at 118 (quoting *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy, taking into consideration the claimant's age, education, and past work experience, in order to deny a claim of disability. *Burnett*, 220 F.3d at 118; 20 C.F.R. § 404.1520(f). If the claimant cannot perform other available work in the national economy, then the Commissioner must grant disability benefits to the claimant.

      The district court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Secretary of Health & Human Servs.*, 859 F.2d 1156 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). Thus, this

Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

## IV.   DISCUSSION

In reaching the decision to deny benefits to Plaintiff, the ALJ applied the five-step process and found as follows: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (2) Plaintiff's asthma is "severe," but does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (3) Plaintiff's subjective complaints of pain were not entirely credible in light of the evidence of record; (4) Plaintiff's impairments result in no exertional limitations, but Plaintiff's residual functional capacity is compromised by non-exertional limitations which preclude prolonged exposure to concentrated levels of dust, fumes, chemicals and smoke, or temperature extremes; (5) Plaintiff retains the residual functional capacity to perform his previous prior work as a warehouse supervisor or driver/messenger; and (5) Plaintiff does not suffer from a disability as defined in the Social Security Act.

Plaintiff appeals the ALJ's finding for step four, arguing that the ALJ's decision that Plaintiff retains the residual functional capacity to perform his previous prior work is not supported by substantial evidence. First, Plaintiff alleges that the ALJ erred in finding Plaintiff had no exertional limitations affecting his residual functional capacity. Second, Plaintiff alleges that the ALJ erred in not fully considering Plaintiff's non-exertional impairments in determining

6

his residual functional capacity. Third, Plaintiff alleges that the ALJ's erred in finding Plaintiff capable of performing his past relevant work.

### 1. Plaintiff Has No Exertional Limitations

Plaintiff claims that his asthma and lower back pain prevent him from having the residual functional capacity to perform his past relevant work. This Court disagrees. The ALJ's determination that Plaintiff has no exertional limitations is supported by substantial evidence.

The term "residual functional capacity" is defined as the most an individual can still do after considering the effects of physical and/or mental limitations that affect a person's ability to perform work-related tasks. 20 C.F.R. § 416.945. At step four, the burden is on the Plaintiff to demonstrate that his limitations prevent return to his previous relevant work. *Burnett*, 220 F.3d at 118.

In determining Plaintiff's residual functional capacity, the ALJ properly evaluated the record documenting Plaintiff's physical and mental limitations. With regard to Plaintiff's asthma, the ALJ noted that Plaintiff performed his job as a warehouse supervisor for over twenty years with his lifelong asthma condition. (Tr. at 24). The record indicates that Plaintiff controlled his asthma with a prescription inhaler and he did not require hospitalization or a nebulizer machine. Plaintiff testified that he had a few asthma attacks per year--approximately four to five times a year--and physical examinations conducted in May of 2002 revealed that Plaintiff was negative for rales, rhonchi, and wheezing, and showed "no evidence of obstructive or restrictive airway disease." (Tr. at 233). The ALJ found this evidence consistent with Plaintiff's treatment records from Gregory Medical Associates from October 1991 to April 2002

which documented a mild respiratory condition.  An x-ray scan of Plaintiff's lungs taken May 13, 2002, found them clear and only "mildly hyperaerated."  (Tr. at 234).  The ALJ found this evidence consistent with Plaintiff's having asthma, but not to any disabling extent, given Plaintiff's lifelong condition, infrequent attacks, and demonstrated ability to work.  There is no evidence in the record that Plaintiff's asthma affected his ability to work or in any way impeded his position as a supervisor or driver/messenger.  Thus, the ALJ's finding that Plaintiff's had no exertional limitations on account of his asthma or other respiratory condition is supported by substantial evidence.

   With regard to Plaintiff's lower back pain, the ALJ reviewed the medical record and found no objective medical signs or clinical findings supporting a diagnosis of disability due to lower back pain.  Plaintiff's job as a supervisor required him to sit for hours at a time entering information on a computer, and there is no evidence he experienced difficulty with such tasks.  In his job as a messenger/driver, Plaintiff testified that, among other duties, he had to deliver computer paper weighing approximately twenty pounds three to four times a day.  Plaintiff left this job because his employer could not obtain insurance for him, not because of a documented inability to lift and carry objects due to his back.  Moreover, on October 1, 2002, Plaintiff reported that he experienced a stiff back only two to three times a year.  To the extent Plaintiff experiences lower back pain, the record indicates Plaintiff successfully treats it with over-the-counter pain medications such as Tylenol.  Thus, the ALJ's finding that Plaintiff had no exertional limitations on account of his lower back condition is supported by substantial evidence.

The ALJ found Plaintiff's subjective complaints of pain to be less than credible and that determination is supported by substantial evidence. Subjective complaints of pain, alone, cannot support a finding of disability. Instead, objective medical evidence, such as medical signs and laboratory findings, must show "a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms." 20 C.F.R. § 404.1529; *see* S.S.R. 96-7p, 1996 SSR LEXIS 4, at \*1-\*2. Thus, the ALJ must reject bare complaints of pain unless they are supported by objective medical findings. Moreover, even when the ALJ has determined that there is an underlying medically determinable condition that could be expected to produce the symptoms complained of, he must make a determination as to the individual's credibility. S.S.R. 96-7p, 1996 SSR LEXIS 4, at \*1-\*2. As a sister court in this district aptly stated:

> The ALJ, though, is not obliged to accept without question the credibility of such subjective evidence. The ALJ has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."

*LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted).

The ALJ properly concluded that Plaintiff's complaints of pain were not supported by the medical evidence. The ALJ made numerous and detailed references to the record to support his conclusion. With regard to Plaintiff's alleged back pain, the ALJ noted that the medical record reveals "sparse complaints of back pain" that "are not supported by demonstrable objective abnormalities." (Tr. at 22). The ALJ relied on the report of Dr. Pollack who noted that, despite Plaintiff's subjective assertions of pain upon raising his legs, Plaintiff demonstrated no difficulty getting on or off the examining table, exhibited a normal gait, and was only taking over-the-

9

counter pain medications. Dr. Pollack ruled out any degenerative joint disease, and did not find evidence in the record supporting the existence of a medically-determinable back problem. Objective clinical findings did not show evidence of muscle atrophy or significant motor, sensory or reflex deficits.

A review of Plaintiff's medical records and testimony reveals that Plaintiff's allegations concerning the extent of his limitations were, at times, contradicted by his own behavior. Plaintiff reported that he experienced back pain five to six times a day on May 10, 2002, but on October 1, 2002, Plaintiff stated he only had a stiff back two to three times a year. A month later, on November 2, 2002, Plaintiff stated that he experienced aching and stabbing back pain three to four times a day which required him to lie down for several hours at a time. Yet the medical evidence documented no significant spinal abnormalities and Dr. Pollack's examination of Plaintiff in May 2002 revealed no signs of difficulty walking or getting on/off the examining table. Additionally, Plaintiff received unemployment insurance benefits after the alleged disability onset date. In order to receive benefits, Plaintiff had to represent to the State that he was ready, willing and able to work. Based on this contradictory evidence, a reasonable person could conclude, as did the ALJ, that Plaintiff's testimony was not entirely credible, and that Plaintiff possessed a "lesser degree of symptoms and a greater level of functioning than contended." (Tr. at 23).

The ALJ also gave little weight to Plaintiff's treating doctor's opinion that Plaintiff could do no work, finding the opinion unsupported by the objective medical evidence. That determination was supported by substantial evidence. "[A] statement by a plaintiff's treating physician that she is 'disabled' or 'unable to work' is not dispositive." *Adorno v. Shalala*, 40

F.3d 43, 47-8 (3d Cir. 1994). Rather, "the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." *Id.* at 48. An ALJ may reject a treating physician's opinion by relying on contrary medical evidence and explaining the reasons for rejection. *Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989).

In this case, the ALJ did weigh the worth of the treating doctor's report against an examining doctor's report and gave Dr. Castillo's report limited weight due to the lack of supporting objective medical evidence and its inconsistency with the progress notes of record. The ALJ referenced Dr. Pollack's examination and the report of non-examining doctors who reviewed the medical record as a whole, including x-ray and pulmonary test results, to find that Plaintiff was not disabled due to asthma or lower back pain.[1]

Moreover, the decision to reject Dr. Jose L. Rodriguez's opinion that Plaintiff was a "pulmonary cripple" and disabled by "chronic obstructive lung disease with bronchial asthma, chronic back pain, and anxiety neurosis" was supported by substantial evidence. (Tr. at 300). "[F]orm reports in which the physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The ALJ noted that no treatment records were submitted with Dr. Rodriguez's opinion to support the diagnosis

---

[1] Plaintiff's reliance on *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981), is misplaced. In this case, there is a factual basis from which to reject Plaintiff's complaints of disabling pain, namely, the lack of objective medical evidence documenting a back condition, Dr. Pollack's examination finding Plaintiff walked and sat without difficulty and was negative for spinal abnormalities, and Plaintiff's extensive work history that involved sitting and standing for hours at a time and lifting objects of twenty pounds or more.

11

of disability, and hence, it was "not sufficient to justify a change in the conclusion" that Plaintiff is not disabled. (Tr. at 15).

### 2. Plaintiff's Non-Exertional Impairments Were Fully Considered

Plaintiff claims that the ALJ failed to fully consider the combined effects of his non-exertional impairments on his residual functional capacity, including his history of suffering from an ulcer and gastritus, allergies, anxiety, coughing and wheezing, and insomnia. Plaintiff is incorrect. The ALJ's decision that Plaintiff possesses the residual functional capacity to perform his previous prior work reflects a thorough review of the medical record and is supported by substantial evidence.

An assessment of a person's residual functional capacity must be based on all of the relevant evidence in the record, including an assessment of a person's physical and mental abilities. 20 C.F.R. § 404.1545. In this case, the ALJ reviewed Plaintiff's medical records and found that Plaintiff submitted no evidence documenting treatment for anxiety or insomnia, and that Plaintiff was never referred to a health specialist for these or other mental disorders.

> [T]he evidence fails to document the presence of anxiety or other mental condition. The claimant is noted to be in no acute distress and displayed no difficulty appropriately interacting upon examination. No difficulties with regard to sleep have been noted. Also, the record contains no reports from any treating or examining source that show a history of any anxiety or other mental problems.

(Tr. at 22). The ALJ noted that "[d]espite ample progress notes, there is no objective evidence of persistent debilitating, physical or mental limitation contained in the record." (Tr. at 23).

With regard to Plaintiff's allergies, the ALJ did not directly address Plaintiff's complaints, but this is harmless given that there is no medical evidence in the record that Plaintiff's allergies significantly impacted his ability to work at his previous employment either singularly or in combination with other conditions. Moreover, Dr. Pollack reported that Plaintiff's eyes were clear and free from irritation, and the record indicates that Plaintiff controlled his allergies with regular medication that did not interfere with his ability to perform his work.

With regard to Plaintiff's gastritus and ulcer, the ALJ did not directly address Plaintiff's complaints, but this is harmless given that there is no evidence that the condition diagnosed in June 1998 was not treated successfully at that time. The record supports the opposite conclusion, given that Plaintiff worked for years after the diagnosis.

### 3.     Plaintiff Could Perform His Past Relevant Work

Plaintiff claims that the ALJ's finding that Plaintiff's residual functional capacity precludes prolonged exposure to concentrated levels of dust, fumes, chemicals and smoke contradicts the determination that he could return to working in a warehouse. Additionally, Plaintiff claims that the ALJ's finding that he could return to his job as a messenger/driver is illogical when Plaintiff does not have a driver's license. Plaintiff is incorrect on both counts. The ALJ's finding that Plaintiff could return to either occupation is supported by substantial evidence.

A determination of a person's residual functional capacity "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or

combination of impairments, including the impact of any related symptoms." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *1.  With regard to Plaintiff having the residual functional capacity to perform his supervisor job, the ALJ's assessment relied on Plaintiff's own testimony that the job did not require prolonged exposure to concentrated levels of dust, fumes, and other irritants.  Plaintiff testified that the job required him to be in an office for most of the day, with only a minimal number of brief trips to the loading areas.  Moreover, he left the job for non-health related reasons, and there is no objective medical evidence in the record indicating he could not perform similar work in the future.

With regard to Plaintiff's messenger/driver work, Plaintiff is mistaken in citing the lack of a driver's license as relevant to his residual functional capacity assessment.  The residual functional capacity determination is based on Plaintiff's functional abilities, given his medically determined impairments.  The record indicates that Plaintiff lost his license and/or his driving job due to accumulating too many points, not because of a health problem.  There is no evidence in the record supporting a medically determinable impairment that precludes Plaintiff from driving.  Thus, the ALJ's finding that Plaintiff is capable of performing his previous work is supported by sufficient and substantial evidence.

In sum, after discussing the evidence of record, the ALJ concluded that Plaintiff failed to demonstrate the existence of a physical or mental limitation that precludes his returning to his past relevant work.  The ALJ's conclusion is supported by substantial evidence and, as such, is affirmed.

**V.     CONCLUSION**

For the foregoing reasons, this Court finds that ALJ Edgell's analysis was adequate and supported by substantial evidence.  Consequently, this Court affirms the Commissioner's decision denying Social Security disability benefits to Plaintiff Norberto Plumey.


                                                  s/William J. Martini
                                                  _____
                                                  **William J. Martini, U.S.D.J.**


Dated: June 30, 2005